# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-00243 |
| | ) | Chief Judge Haynes |
| | ) | |
| DAVID A. FLETCHER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Before the Court is Defendant's motion to dismiss Counts Two and Three of the Superseding Indictment (Docket Entry No. 163) to which the Government responded (Docket Entry No. 168). Defendant contends that Counts Two and Three should be dismissed as caused by race-based selective prosecution and vindictive prosecution. In his brief, Defendant also cites the Government's election not to indict Agent Kevin Koback "for essentially the same conduct." (Docket Entry No. 164, at 6). In response, the Government contends that Defendant fails to show that, unlike himself, similarly situated defendants have not been prosecuted based upon their race and that Counts Two and Three were based upon new evidence that did not increase Defendant's maximum sentence and the charging decision was not vindictive.

### A. Review of the Record

On October 7, 2009, the grand jury in the Middle District of Tennessee indicted Defendant for being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). (Docket Entry No. 1). On September 23, 2011, Defendant filed a motion to suppress evidence seized by the

Government agents from 600 Heritage Drive, Apartment No. M-261, Madison, Tennessee, where Defendant was arrested on August 7, 2009. In sum, Defendant contended that he did not consent to the search of the apartment. (Docket Entry No. 65). On December 8, 2011, Defendant supplemented his motion seeking suppression of any statements Defendant allegedly made at the time of his arrest because law enforcement officers did not read him his rights under Miranda v. Arizona, 384 U.S. 436 (1966). (Docket Entry Nos. 82 and 83). On December 9, 2011, the Court conducted an evidentiary hearing on Defendant's suppression motions. (Docket Entry No. 84).

At the evidentiary hearing, James Grant, a Tennessee state trooper and member of the United States Marshal's Fugitive Task Force, who participated in Defendant's arrest on August 7, 2009, testified that the Robertson County Sheriff's office had outstanding arrest warrants for Defendant for aggravated assault and aggravated burglary. (Docket Entry No. 88, Transcript, at 5-6). In his research of the law enforcement database, Grant discovered Defendant at a residence in Madison, Tennessee. Id. at 6. Subsequent surveillance revealed a vehicle registered to Defendant parked outside of this apartment. Id. at 6-7. Grant knocked on the door of this residence and without a response, Task Force officers entered the apartment. Id. at 7.

Grant testified that the officers awoke Defendant from sleep, identified themselves as law enforcement officers, told him he was under arrest, handcuffed him, and then Grant advised Defendant of his Miranda rights. Id. at 10. According to Grant, Defendant responded that he understood his rights. Id. Grant testified that he inquired if there were any weapons in the apartment to which Defendant answered: "[N]o, there are no guns here. You can search anywhere you want." Id. at 10-11. The officers subsequently located in plain view a shoulder holster containing

ammunition. Id. at 11-12. According to Grant, Defendant stated that the shoulder holster and ammunition belonged to some of his co-workers, who helped him locate fugitives. Id. at 14.

On cross examination, defense counsel asked Grant, "I think at some point you presented him with a receipt for the property that was taken out of the apartment, and he refused to sign; is that correct?", to which Grant answered, "That's correct." Id. at 31. Grant denied that he told Defendant, "[A]ll niggers are guilty." Id. at 32, 42.

On direct examination, Defendant testified that he awoke to Grant and Task Force officers pointing a gun at him, that Grant began searching the apartment without Defendant's permission, that Grant uttered racial slurs at him and that Grant did not read Defendant his Miranda rights. Id. at 37-38, 41-42. Defendant also stated that he declined to sign the property receipt because the apartment was rented by his niece and he had just gone over there to drink. Id. at 42-44.

On cross examination, the Government questioned Defendant about his assertion that the apartment belonged to his niece.

> Q.   Mr. Fletcher, 600 Heritage Drive was an apartment that you were known to reside at; isn't that right?
>
> A.   No, sir.
>
> Q.   You never resided there?
>
> A.   Yes, sir.
>
> Q.   So the first question I asked you was: 600 Heritage Drive was an apartment you were known to reside at; isn't that right?
>
> A.   I didn't live at 600 Heritage Drive, if that answers your question.
>
> Q.   Did you ever register a driver's license there?
>
> A.   No, sir.

3

| Q. | Do you know why the Department of Motor Vehicles would have a driver's license registered to you at that address? |
|---|---|
| A. | Because after my August the 7th arrest, my niece was going to move out because she was scared. So I told her I will keep the apartment, and I registered to that address at that time. But not prior to that. Prior to that, the driver's license that Mr. Grant took had White Bridge Road address on it. |
| Q. | I'm not asking what was on the driver's license. I'm asking what was registered. Is it your testimony that you never had your address listed with the Department of Motor Vehicles prior to August the 7th? |
| A. | I had a driver's license listed to it after August 7th. |
| Q. | Okay. So the driver's license would not reflect that you were there prior to your arrest then; right? |
| A. | No, sir; they shouldn't. |

Id. at 43-44.

At the conclusion of the evidentiary hearing, the Court took the matter under advisement. On May 2, 2012, the Court denied Defendant's motions to suppress. (Docket Entry No. 99).

On August 21, 2012, Defendant's jury trial commenced. At trial, defense counsel called Darron Grundman, one of Defendant's bounty hunter co-workers, as a witness to support Defendant's defense that the shoulder holster and ammunition belonged to Grundman. (Docket Entry No. 128 at 16-20). On cross examination, Grundman testified that Defendant previously threatened him to say that the ammunition and shoulder holster belonged to him, not Defendant. Id. at 36-39. In closing argument, defense counsel did not argue that Defendant did not reside at the apartment. Instead defense counsel argued that Grundman was dishonest and that the ammunition and shoulder holster belonged to Grundman. Id. at 135-37, 140-42.

On August 23, 2012, after the jury failed to reach a verdict, Defendant moved for a mistrial to which the Government did not object. (Docket Entry No. 129 at 10). The Court declared a

mistrial and entered an Order of mistrial. (Docket Entry No. 112). On August 30, 2012, Defendant filed a motion for judgment of acquittal (Docket Entry No. 115) that was denied on May 21, 2013. (Docket Entry No. 145).

On January 11, 2013, Amanda Comer, a former manager of the apartment complex where Defendant was arrested, provided a statement to Special Agent John Harrell informing him that Defendant resided at the apartment at 600 Heritage Drive and was evicted after his arrest. (Docket Entry No. 168-3). On January 18, 2013, Kristen Peters provided a statement that on several occasions she dropped off papers from Tennessee Quick Cash to Defendant at the 600 Heritage Drive apartment and did not know of any other address that Defendant may have resided. (Docket Entry No. 168-4). On January 24, 2013, Shelenda Fletcher, Defendant's niece, provided a statement to Harrell that shortly after January 2009 she and her daughter moved out of the 600 Heritage Drive apartment after Defendant moved into the apartment. (Docket Entry No. 168-5). According to Harrell, in a second interview that day, Shelenda Fletcher modified her prior statement and told Harrell that she and her daughter lived at the apartment "on and off" and that Defendant sometimes stayed there. Id. During the latter interview, Shelenda Fletcher told Harrell that Defendant was on his way to her house that caused Harrell to suspect that she had spoken to Defendant about their previous conversation. Id.

As a result of Defendant's testimony at the suppression hearing that he did not live at the apartment at 600 Heritage Drive where he was arrested or have his driver's license registered there until after his arrest, on February 20, 2013, the Government filed a Superseding Indictment with the felon in possession charge in Count One, adding Counts Two and Three, knowingly making a false

statement and obstruction of justice, in violation of 18 U.S.C. §§ 1623(a) and 1503. (Docket Entry

No. 131). The Superseding Indictment states, in relevant part, as follows:

COUNT TWO

THE GRAND JURY FURTHER CHARGES:

1.     On or about December 9, 2011, in the Middle District of Tennessee, **DAVID A. FLETCHER** having duly taken an oath that he would testify truthfully, did knowingly make a false declaration regarding a material matter in proceedings before the United States District Court for the Middle District of Tennessee, a Court of the United States.

2.     During these proceedings, the aforesaid District Court was conducting a hearing to determine whether the search and seizure of items found at 600 Heritage Drive, Madison, TN on August 7, 2009 violated DAVID A. FLETCHER's constitutional rights. It was material to this hearing to determine whether DAVID A. FLETCHER registered his Tennessee driver's license to 600 Heritage Drive, Madison, TN, prior to August 7, 2009. It was further material to this hearing to determine whether DAVID A. FLETCHER was credible when he testified on December 9, 2011.

3.     On or about December 9, 2011, during these proceedings, DAVID A. FLETCHER appeared as a witness before the United States District Court for the Middle District of Tennessee, and then and there being under oath, testified falsely before the Court with respect to the aforesaid material matter as follows:

> QUESTION. Mr. Fletcher, 600 Heritage Drive was an apartment that you were known to reside at; isn't that right?
>
> ANSWER. No, sir.
>
> QUESTION. You never resided there? ANSWER. Yes, sir.
>
> QUESTION. So the first question I asked you was: 600 Heritage Drive was an apartment you were known to reside at; isn't that right?
>
> ANSWER. I didn't live at 600 Heritage Drive, if that answers your question.
>
> QUESTION. Did you ever register a driver's license there?

6

ANSWER. No, sir.

QUESTION. Do you know why the Department of Motor Vehicles would have a driver's license registered to you at that address?

ANSWER. Because after my August the 7th arrest, my niece was going to move out because she was scared. So I told her I will keep the apartment, and I registered to that address at that time. But not prior to that. Prior to that, the driver's license that Mr. Grant took had White Bridge Road address on it.

QUESTION. I'm not asking what was on the driver's license. I'm asking what was registered. Is it your testimony that you never had your address listed with the Department of Motor Vehicles prior to August the 7th?

ANSWER. I had a driver's license listed to it after August 7th.

QUESTION. Okay. So the driver's license would not reflect that you were there prior to your arrest then; right?

ANSWER. No, sir; they shouldn't.


4.      The underscored portion of this testimony, as DAVID A. FLETCHER then and there knew, was false in that, on August 7, 2009, DAVID A. FLETCHER had a Tennessee driver's license registered to 600 Heritage Drive, Madison, TN.

In violation of Title 18, United States Code, Section 1623(a).

## COUNT THREE

THE GRAND JURY FURTHER CHARGES:

On or about December 9, 2011, in the Middle District of Tennessee and elsewhere, **DAVID A. FLETCHER**, did corruptly endeavor to influence, obstruct and impede the due administration of justice in *United States v. David Fletcher*, No. 3:09-00243, in the United States District Court for the Middle District of Tennessee, by knowingly giving testimony that was false, evasive and misleading, to wit, the statements made by the defendant as charged in Count Two of this indictment.

In violation of Titl18, United States Code, Section 1503.

7

(Docket Entry No. 131 at 2-4) (emphasis in original).

The statutory maximum penalty for violation of 18 U.S.C. §§ 922(g)(1) and 1503 is ten years imprisonment and five years imprisonment for 18 U.S.C. § 1623(a). See 18 U.S.C. § 924(a)(2), 18 U.S.C. § 1503(b)(3) and 18 U.S.C. § 1623(a).

On April 12, 2013, Defendant filed a motion to sever or in the alternative, motion for recusal. (Docket Entry No. 140). On July 2, 2013, the Court denied Defendant's motion. (Docket Entry No. 150).

### B. Conclusions of Law

Defendant contends that Counts Two and Three of the Superseding Indictment should be dismissed based upon the Government's selective prosecution of Defendant, an African American, for allegedly giving false testimony during the December 9, 2011 suppression hearing. Defendant cites Kevin Koback, a Government witness who is Caucasian, as providing false testimony in a separate judicial proceeding, but was not prosecuted. Defendant also contends that the Government's prosecution in Counts Two and Three of the Superseding Indictment is vindictive.

In response, the Government argues that the witnesses' credibility was central to resolving the primary issues at the suppression hearing, i.e., whether Defendant consented to the search of the apartment and whether the officers read and Defendant waived his Miranda rights. The Government cites a related credibility issue when Defense counsel elicited Defendant's testimony that Defendant did not live at the apartment and did not have his driver's license registered to the address until after Defendant's arrest. According to the Government, these comments could not have been charged as perjury at the time of the original Indictment because Defendant had not yet made them and in expectation that Defendant would testify at trial, the Government subpoenaed, as a rebuttal witness,

8

the custodian of records for the Tennessee Department of Motor Vehicles to provide certified records demonstrating that Defendant had a driver's license registered to the apartment approximately four months prior to his arrest. See Docket Entry No. 168-1, Defendant's driver's license records. A lease of the apartment also revealed that Defendant was listed on the lease as "Adult co-head of household" with Shelenda Fletcher, his niece. (Docket Entry No. 168-2 at 1, Rental Lease).

The Government asserts that these records undercut any defense that Defendant was simply mistaken at the evidentiary hearing and, in addition, that only on the day of trial did the proof start to become strong enough to consider charging Defendant with perjury and obstruction. The Government contends that Defendant cannot establish the elements of a selective prosecution claim. The Government further argues that Defendant fails to present evidence of actual vindictiveness.

### 1. Selective Prosecution

The Government has "'broad discretion' as to whom to prosecute." Wayte v. United States, 470 U.S. 598, 607 (1985) (citations omitted). As "long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). The Government's broad discretion is based upon "the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." Wayte, 470 U.S. at 607. Yet, while such prosecutorial discretion is broad, "it is not 'unfettered.' Selectivity in the enforcement of criminal laws is . . . subject to constitutional

constraints.'" Wayte, 470 U.S. at 608 (citation and internal quotation marks omitted). Thus, prosecution "may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" United States v. Armstrong, 517 U.S. 456, 464 (1996) (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)).

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." Id. at 463. The standard for proving a selective prosecution claim "is a demanding one." Id. A defendant must demonstrate that the federal prosecutorial policy "had a discriminatory effect" and that the policy "was motivated by a discriminatory purpose." Id. at 465 (citation omitted). "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." Id. To warrant discovery in a selection prosecution claim, the defendant must present "'some evidence tending to show the existence of the essential elements of the defense,' discriminatory effect and discriminatory intent." Id. at 468 (citation omitted). The Supreme Court has described this standard as " a rigorous" one. Id.; see United States v. Thorpe, 471 F.3d 652, 665 (6th Cir. 2006) ("Armstrong does not afford district courts the discretion to grant discovery in selective-prosecution cases where the rigorous 'some evidence' standard has not been met.").

Defendant asserts that the Government elected not to indict Agent Koback for essentially the same conduct. As evidence of selective prosecution, Defendant cites Koback's deposition testimony in Milligan v. United States, 644 F. Supp.2d 1020 (M.D. Tenn. 2009). In Milligan, the plaintiff, who was mistakenly arrested during a nation-wide "fugitive round-up," filed a civil action in federal court against the United States, United States Marshals Service, and deputy marshals, among others,

10

alleging violations of her constitutional rights. Id. There, the Davidson County Grand Jury returned

an indictment against "Paula Milligan, a.k.a. Paula Rebecca Staps," and a capias was issued for that

individual, described as a 24-year-old white female with a North Carolina driver's license, whereas

the plaintiff, Mrs. Paula Ann Milligan, was a 42-year-old white female with a Tennessee driver's

license. Id. at 1027. Koback was responsible for preparation and communication to other officers

of "the list of outstanding warrants and capiases that would be served during the operation." Id. The

Court summarized the facts that led to the plaintiff's mistaken arrest:

> That list was in the form of an Excel spreadsheet, and Sargent Bourk sent Deputy
> Marshal Koback a number of versions of that spreadsheet. An early version of the
> spreadsheet that Sargent Bourk sent to Deputy Marshal Koback contained Mrs.
> Milligan's name with her correct birth date and Tennessee driver's license number,
> but the North Carolina address of Ms. Milligan/Staps. A later version of the list, sent
> after Sargent Bourk had "cleaned" the list by removing warrants that would not be
> served during the operation, did not contain Mrs. Milligan's name, on account of the
> fact that her name was associated with an out-of-state address. However, Deputy
> Marshal Koback apparently forwarded the earlier version of the list, containing Mrs.
> Milligan's name, to the Tennessee Bureau of Investigation ("T.B.I.") so that the T.B.I.
> could create arrest files containing the paperwork for each arrest that would take
> place during Operation Falcon III. FN5 As a result, an arrest file was created for Mrs.
> Milligan.

Id. at 1027-28 (footnotes omitted).

The Court noted that "Koback originally testified that he believed that he sent the later list

. . . to the T.B.I.," and that "Koback has acknowledged that his initial testimony was mistaken and

has submitted an affidavit to this effect." Id. at 1028 n.5. The Court characterized Koback's initial

testimony as "incorrect." Id. at 1040 n.14. The Court further stated, "In any event, any claimed

dispute about Deputy Marshal Koback's actions and testimony is not borne out by the evidence and,

further, is not material" as the plaintiffs did not based their claim on Koback's actions. Id.

Defendant also cites Koback's affidavit that states, in part:

11

In my deposition testimony on December 16, 2008, I stated that I believed I forwarded on to the Tennessee Bureau of Investigation [TBI] the last such spreadsheet sent to me by SGT Bourke. I believed that to be true at the time. However, after more carefully reviewing the emails and the spreadsheets attached to them, I now believe that I was mistaken, and that it was the first such spreadsheet, sent to me on October 9, 2006, that I forwarded on to TBI to be worked up. I base this on the fact that only the October 9, 2006 spreadsheet contains the name of the plaintiff, Paula Milligan.

(Docket Entry No. 164-1, Koback Affidavit at ¶ 3).

The Government contends that Koback is not similarly situated to Defendant. "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." United States v. Lewis, 517 F.3d 20, 27 (1st Cir. 2009). When configuring a pool of similarly situated offenders, "*no fact should be omitted to make it out completely.*" Id. (noting that "this statement cannot be taken literally") (quoting Armstrong, 517 U.S. at 466) (quoting Ah Sin v. Wittman, 198 U.S. 500, 508 (1905)) (emphasis preserved).

To determine whether a defendant and others are "similarly situated" for a selective prosecution claim,

[t]he focus of an inquiring court must be on factors that are at least arguably material to the decision as to whether or not to prosecute," and a factor will be deemed "material" if it has "some meaningful relationship either to the charges at issue or to the accused" and therefore "might be considered by a reasonable prosecutor." Unrelated, irrelevant, or trivial factors cannot meet the materiality requirement and, therefore, cannot be built into the configuration of the pool.

The bottom line, then, is that a district court should assess every material fact in rendering its judgment as to which offenders should be deemed similarly situated. See United States v. Olvis, 97 F.3d 739, 744 (4th Cir. 1996) (explaining that "defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them").

Id.; United States v. Hendrickson, 664 F. Supp.2d 793, 799 (E.D. Mich. 2009).

Whether the Government decides to prosecute one individual but not another may be legitimately influenced by a multiplicity of factors. Id. Such factors may include, "inter alia, the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant." Id.; see also United States v. Smith, 231 F.3d 800, 810 (11th Cir.2000) (defining "similarly situated" person "as one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant . . . and against whom the evidence was as strong or stronger than that against the defendant."). Moreover, "the government may lawfully single out an offender for prosecution because he has violated a law over and over again." Id. at 28 (citing Smith, 231 F.3d at 812).

Here, Defendant fails to establish that he and Koback are similarly situated. Unlike Koback, Defendant is a convicted felon who may not possess ammunition. In fact Defendant was convicted of sale of less than .5 grams of cocaine, a class C felony; possession of cocaine for resale or delivery; and theft of property between $1000 and $10,000, all in the Criminal Court of Davidson County Tennessee. (Docket Entry No. 12-7). Unlike Koback, at the time of Defendant's alleged perjury, Defendant was under indictment for being a felon in possession of ammunition. Defendant raised the issue of credibility during a criminal suppression hearing and unequivocally testified that he did not reside at the apartment and that he did not register his address on his driver's license until after his arrest that is contradicted by Defendant's driver's license records and apartment rental agreement. (Docket Entry No. 168-1 and 2).

Further, unlike Defendant, evidence against Koback for perjury was weaker. In Milligan, a civil action, the district court characterized Koback's statement as "incorrect" and concluded that it was "not material." 644 F. Supp.2d at 1040 n.14. Koback also provided an affidavit correcting his original testimony, giving a plausible explanation for his misstatement about multiple spreadsheets. Moreover, the district court elected not to refer the matter for prosecution. See Keene v. Mitchell, 525 F.3d 461, 465 (6th Cir. 2008) (finding third party not similarly situated to petitioner "because the evidence against [the third party] was much weaker than the evidence against [petitioner]."). Accordingly, based upon this record, the Court concludes that Koback was not similarly situated to Defendant.

In addition to Koback, Defendant further cites the Government's decision not to prosecute Darron Grundman, a Caucasian, for providing false testimony to a federal officer under 18 U.S.C. § 1001. According to an ATF investigation report, dated January 4, 2013, prepared by Agent John Harrell, on December 28, 2012, Grundman helped apprehend a fugitive charged with both state and federal warrants. (Docket Entry No. 181). Grundman allegedly promised certain individuals with a portion of the reward money if they assisted in the capture of the fugitive, but after they cooperated Grundman reneged on the deal. Id. Harrell asked Grundman about the reward offer, but Grundman twice denied making such an offer. Unbeknownst to Grundman, Harrell had an audio and videotape of the encounter between Grundman and the cooperating individuals that proves otherwise. Id.

Unlike Defendant, Grundman has not been charged as a felon in possession of ammunition and his alleged false statement was not made while under oath in a criminal proceeding. Further, Defendant was not charged under 18 U.S.C. § 1001. See Thorpe, 471 F.3d at 658-59 ("The reports, however, said nothing about whether any of the 'pending firearm cases' dealt with prosecutions for

14

violations of 18 U.S.C. § 922(g), the statutory provision under which Thorpe was indicted. . . . An individual similarly situated to Thorpe would therefore be a felon known to federal law enforcement officers who has been arrested for 'possess [ing] in or affecting commerce, any firearm or ammunition.' See 18 U.S.C. § 922(g)."); United States v. Holloway, 29 F. Supp.2d 435, 439 (M.D. Tenn. 1998) (in distinguishing Holloway from other defendants as not being similarly situated, the court stated, "Unlike Holloway, neither Jones nor White is charged with violating § 1958(a). While Holloway and White are both charged with killing individuals in order to prevent those individuals from communicating with law enforcement officers, neither Jones nor White is charged with the murder of a Federal Grand Jury Witness.").

Accordingly, based upon the evidence here, the Court concludes that Grundman is not similarly situated to Defendant. Where Defendant fails to demonstrate a discriminatory effect, the Court "need go no further in the present case than consideration of the evidence supporting discriminatory effect." United States v. Bass, 536 U.S. 862, 863 (2002).

## 2. Vindictive Prosecution

Defendant contends that the Government's prosecution of Counts Two and Three of the Superseding Indictment is vindictive for Defendant exercising his constitutional right to testify at the suppression hearing about Grant's alleged use of racial slurs. Defendant contends that he also exercised his right to file a pre-trial motion to suppress certain statements allegedly made to law enforcement officers at the time of his arrest. Defendant submits that the Government brought the additional charges in the Superseding Indictment to discredit and dissuade Defendant from testifying in the future.

15

The Government contends that following the mistrial the new and more serious charges, Counts Two and Three, are not based upon the same underlying conduct charged in Count One. The new charges were discussed during plea negotiations and were pursued only after plea discussions ended.[1] Thus, the Government contends that Defendant cannot show a prosecutorial stake in the exercise of a protected right or that the prosecutors' conduct was unreasonable.

Prosecutorial discretion does not permit punishing a defendant "for exercising a protected statutory or constitutional right." United States v. Poole, 407 F.3d 767, 774 (6th Cir. 2005) (citing United States v. Goodwin, 457 U.S. 368, 372 (1982)). Yet, "'the Due Process Clause is not offended by all possibilities of increased punishment . . . [ ] only by those that pose a realistic likelihood of vindictiveness." Blackledge v. Perry, 417 U.S. 21, 27 (1974) (internal quotation marks omitted). "A charging decision does not levy an improper 'penalty' unless it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution." Goodwin, 457 U.S. at 380 n.11. To show prosecutorial vindictiveness, a defendant must show either "actual vindictiveness" or a "realistic likelihood of vindictiveness." Poole, 407 F.3d at 774 (citations omitted).

> A defendant can show "actual vindictiveness," by producing "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," or the Court can find a presumption of vindictiveness by applying the "realistic likelihood of vindictiveness," standard which focuses on the prosecutor's "stake" in deterring the exercise of a protected right and the unreasonableness of his actions.

Id. "Attempting to show actual vindictiveness has been characterized as 'exceedingly difficult' and an 'onerous burden.'" United States v. Dupree, 323 F.3d 480, 489 (6th cir. 2003) (citing Bragan v.

---

[1]The Government did not file an affidavit in support of this contention.

Poindexter, 249 F.3d 476, 481, 483 (6th Cir.2001)). "Each situation will necessarily turn on its own facts." United States v. Andrews, 633 F.2d 449, 454 (6th Cir. 1980) (en banc).

To establish a presumption of vindictiveness, a defendant must show: "(1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; (4) the intent to punish the defendant for exercise of the protected right." United States v. Suarez, 263 F.3d 468, 479 (6th Cir. 2001). If a defendant establishes the first three elements, "this may help establish grounds to believe the fourth is present, that there is the required 'realistic likelihood of vindictiveness,' which the government would have to rebut." Id. The Government can overcome a presumption of vindictiveness "by objective evidence justifying the prosecutor's action." Goodwin, 457 U.S. at 376 n.8. "[I]f the charges are brought simply as the result of failure of the plea bargaining process, they are not vindictive." Suarez, 263 F.3d at 479. Further, "the mere presence of a superseding indictment bringing additional charges is not sufficient to be presumptively unreasonable. Generally, a potentially vindictive superseding indictment must add additional charges or substitute more severe charges based on the same conduct charged less heavily in the first indictment." Id. at 480 (citations omitted). Thus, "[i]f the prosecution can show that the additional charges were not brought earlier because they were based on new evidence, it will successfully rebut a showing of vindictiveness." Id. (citation omitted).

Defendant does not identify a basis for "actual vindictiveness" nor is there any evidence of "actual vindictiveness" in the record. United States v. Taylor, 489 Fed.Appx. 34, 40 (6th Cir. 2012) ("Because Roach held that reindicting the defendant following a mistrial did not raise a presumption of vindictiveness, it follows by even stronger force of logic that reindicting a defendant following a mistrial does not constitute objective evidence of prosecutorial misconduct.") (citing United States

17

v. Roach, 502 F.3d 425, 444-45 (6th Cir.2007)). Thus, Defendant must show a presumption of vindictiveness by applying the "realistic likelihood of vindictiveness" standard. For guidance, the Court looks at the similar situations addressed by the Sixth Circuit in United States v. Roach, 502 F.3d 425 (6th Cir. 2007) and United States v. Poole, 407 F.3d 767 (6th Cir. 2005).

In Roach, the defendant Sheldon was charged in a three-count indictment with depriving two individuals, Gomez (Count II) and Mejia (Count III), of their civil rights under color of law and with conspiracy (Count I) to do the same. 502 F.3d at 431. The jury acquitted Sheldon of the conspiracy charge, but could not agree on the other two counts. Id. The Government filed a superseding indictment charging Sheldon with depriving Gomez (Count I) and Mejia (Count II) of their civil rights under color of law and with being an accessory after the fact (Count III). Id. In addressing the defendant's prosecutorial vindictiveness claim, the Sixth Circuit compared its decision in Poole with the similar factual situation before it. Id. at 443. The Court summarized:

> This court's decision in Poole addresses a situation very similar to the one before us. Poole was indicted on one count of being a felon in possession of a firearm. The district court declared a mistrial because the jury could not reach a unanimous verdict. Thereafter, the government requested the grand jury to return a superseding indictment that charged Poole with being a felon in possession of a firearm, with possession of a firearm during the commission of a drug crime, and with possession of crack cocaine with the intent to distribute. The grand jury did so. Poole then proceeded to a second trial, where he was found guilty of all three offenses.
>
> On appeal, Poole argued that the district court erred in denying his motion to dismiss the superseding indictment, which he alleged was the result of vindictive prosecution.
>
> . . . .
>
> First, the Poole court noted that "while the timing [of the superseding indictment] certainly does not compel the conclusion that a change in the indictment was a product of vindictiveness, it does make the possibility more likely than would a change at a pretrial stage." The court also noted that the prosecution's "stake" increases when it is forced to "do over what it thought it had already done correctly."

18

But the court found persuasive the fact that the government had not objected to the mistrial. "Thus, it seems not only that the prosecution welcomed the new trial, it also realized that there was a better way to conduct it." Accordingly, "the government's response to the mistrial—seeking a superseding indictment—was reasonable under the circumstances presented here." The court then concluded that even if Poole had raised a presumption of vindictive prosecution, the government had rebutted any such presumption because "there exist[ed] objective information in the record to justify the increased sentence or additional charges."

Roach, 502 F.3d at 443-44 (citations omitted).

In concluding that the district court did not err in denying Sheldon's motion to dismiss the superseding indictment for prosecutorial vindictiveness, the Roach Court noted that "the new charge," accessory after the fact, "was a less severe charge than those contained in the original indictment and, for another, was approved by a grand jury and therefore 'presumed to have rested on probable cause,' and that Sheldon did not allege that the 'grand jury was manipulated or otherwise prejudiced against him.'" Id. at 445 (quoting Suarez, 263 F.3d at 481). The Court further noted that "there was objective evidence in the record that supported the new charge." Id.

Here, Defendant's claim for prosecutorial vindictiveness fails for several reasons. In Goodwin, the Supreme Court noted that:

a defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

457 U.S. at 381.

Defendant's motion to suppress was the type of pretrial motion routinely filed and is an expected part of the criminal justice system. Unlike the defendant in United States v. LaDeau, 734

F.3d 561, 569 (6th cir. 2013) who succeeded in suppressing crucial evidence that "eviscerated" the government's possession of child pornography case and inflicted a "mortal blow" that made prosecution of the claim "impossible," Defendant here did not achieve such success. Also, Defendant's testimony at the suppression hearing was detrimental to Defendant as the Court concluded that "Defendant's statement that he had 'no idea' what his Miranda rights [are] lacks credibility." (Docket Entry No. 98, Memorandum, at 8).

Further, the additional charges in the Superseding Indictment are not more severe, as the statutory maximum penalty for violation of 18 U.S.C. §§ 922(g)(1) and 1503 is ten years imprisonment and five years imprisonment for 18 U.S.C. § 1623(a), and are based upon new evidence. Defendant's statements leading to his perjury charge were made while testifying at the suppression hearing and after the original Indictment was filed. Further, the new charges were "approved by a grand jury and therefore 'presumed to have rested on probable cause.' " Roach, 502 F.3d at 445 (quoting Suarez, 263 F.3d at 481). "As in Roach, the Defendant here does not allege that the Grand Jury was manipulated or otherwise prejudiced against him." United States v. Padilla, No. 3:10–00258, 2012 WL 3644742, at *3 (M.D. Tenn. Aug. 23, 2012). Moreover, the Government did not object to a request for mistrial. Poole, 407 F.3d at 776 (finding persuasive that the government did not object to the mistrial).

Accordingly, for these collective reasons Defendant's claim for prosecutorial vindictiveness fails.

### C. Conclusion

Accordingly, for these reasons the Court concludes that Defendant's motion to dismiss Counts Two and Three of the Superseding Indictment (Docket Entry No. 163) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the ____ day of April, 2014.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court